James H. Hohenstein
H. Barry Vasios
Barbra R. Parlin
HOLLAND & KNIGHT LLP
31 W. 52nd Street
New York, New York 10019
Telephone: 212-513-3200
Facsimile: 212-385-9010

Hearing Date and Time: June 22, 2010 at 10:00 a.m. (EDT)

*Counsel for the Administrator of*
*The International Banking Corporation B.S.C.*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------x
                       :

In re                   :

                    :    Chapter 15

THE INTERNATIONAL BANKING   :
CORPORATION B.S.C.,       :    Case No. 09-17318 (SMB)

                    :

          Debtor in a   :
          Foreign Proceeding.  :

                    :
------------------------------------------------------x

## RESPONSE IN FURTHER SUPPORT OF ADMINISTRATOR'S
## MOTION FOR ENTRY OF AN ORDER PURSUANT
## TO BANKRUPTCY RULE 2004 AUTHORIZING DISCOVERY

Trowers & Hamlins, the duly appointed external administrator and foreign representative (the "Administrator") of The International Banking Corporation, B.S.C. ("TIBC"), a bank existing under the laws of Bahrain, by its undersigned United States counsel, Holland & Knight LLP, respectfully submits this response to the Objection of Ahmad Hamad Algosaibi & Brothers Company ("AHAB") to the Administrator's motion for entry of an order pursuant to Rule 2004 of the Federal Rules of Bankruptcy Procedure (the "Motion"), authorizing certain discovery from Bank of America, N.A., New York (the "Bank"). This response is further supported by the

accompanying Reply Declaration of Abdullah Mutawi executed on June 21, 2010 (the "Mutawi Reply Decl.").

## PRELIMINARY STATEMENT

The Objection filed by AHAB to the Administrator's Rule 2004 motion does not contest the essential facts relevant to the Administrator's motion for discovery of banking records related to AHAB's account at the Bank of America in New York City (the "Account"). AHAB concedes that the Account was opened in AHAB's name and was operated by a division of AHAB called the Money Exchange. Moreover, by its conduct in relationship to TIBC, AHAB has acted as the majority shareholder of TIBC. Nevertheless, AHAB contends that it was Maan Al Sanea of The Money Exchange (a division of AHAB), not AHAB itself, who purportedly caused TIBC to make loans to fake customers and used the Account in order to divert TIBC's funds to Mr. Al Sanea's friends, cronies and companies.

Mr. Al Sanea has contested these objections in various lawsuits between AHAB and others. The Administrator is not a party to those lawsuits. Even if AHAB's contentions were true, a matter about which, except where contradicted by the public record, the Administrator does not take a position presently, AHAB concedes that TIBC's funds were improperly diverted from the Account. Moreover, the Administrator still does not know to whom, or in what amounts or how a sum of approximately $1.5 billion of TIBC's funds were diverted from the Account. The Administrator's purpose in filing this Rule 2004 motion is to discover documents that will enable the Administrator to answer those questions.

AHAB's objections do not address the fundamental reason why the discovery at issue is necessary: the legitimate creditors of TIBC, who in many cases provided the funds that went missing, and whose interests the Administrator represents, have an overriding interest in ascertaining how TIBC's funds were diverted from the Account, to whom and in what amounts, so that the Administrator can commence actions to recover those funds for the benefit of those creditors. This is particularly important given that it is highly likely that the current administration of TIBC will end in liquidation, not reorganization.

To be clear, despite AHAB's unwarranted speculation, the Administrator does not have the information it seeks. The so-called Ernest & Young ("EY") report does not contain the information. Moreover, the Administrator, who took office only after AHAB's representatives, the accounting firm, Deloitte & Touche, LLP and the law firm Baker & Mackenzie, had been in TIBC's offices in Bahrain to examine its files for days, has not been able to conclusively determine whether any of the borrowers whose loans were funded with TIBC money through the Account are legitimate albeit the Administrator's investigation to date indicates that most, if not all of the TIBC funds were not delivered to the borrowers identified in the TIBC records. Indeed, in examining the books and records available at TIBC's offices, many of the loans appeared legitimate as periodic interest payments were made in a timely fashion.

What is not clear here is why AHAB wants to prevent the Administrator, acting in the best interest of legitimate creditors of TIBC, from having this information. If AHAB claims that it, like TIBC's creditors, was the ultimate victim of a massive fraud, it should support this discovery request, unless it has something to hide.

3

<u>**ARGUMENT**</u>

I.      **The Administrator Requires the Discovery Sought in Its Rule 2004 Motion to Ascertain the Debtor's Assets and Protect Creditors' Interests**

The Administrator's Motion was filed in order to fulfill the Administrator's statutory duty to seek out and collect TIBC's assets and protect the interests of legitimate creditors. The purpose of chapter 15 is to protect the assets of the debtor and preserve the rights of the creditors. Section 1521 specifically provides for the taking of discovery as sought in the Administrator's Rule 2004 motion. *See* 11 U.S.C. § 1521(a)(4) ("providing for the examination of witnesses, the taking of evidence or the delivery of information concerning the debtor's assets, affairs, rights, obligations or liabilities"). The purpose of Rule 2004 discovery is to "'to show the condition of the estate and to enable the Court to discover its extent and whereabouts, and to come into possession of it, that the rights of creditor may be preserved.'" *In re Coffee Cupboard, Inc.*, 128 B.R. 509, 514 (Bankr. E.D.N.Y. 1991) (citing *Cameron v. United States*, 231 U.S. 710, 717 (1914)). The scope of a Rule 2004 examination is broad and "can be legitimately compared to a fishing expedition." *In re Drexel Burnham Lambert Group, Inc.*, 123 B.R. 702, 711 (Bankr. S.D.N.Y. 1991) (citing *In re Vantage Petroleum Corp.*, 34 B.R. 650, 651 (Bankr. E.D.N.Y. 1983)).

Moreover, the Administrator is charged with marshalling estate assets and, if necessary to achieve that end, instituting all necessary litigation. *See In re Drexel Burnham Lambert Group, Inc.*, 123 B.R. at 708. The discovery requested in its Motion will permit the Administrator to determine to whom the funds diverted from the Account were sent, and in what amounts, so that the Administrator can institute litigation to recover those funds. *See In re Table Talk, Inc.*, 51 B.R. 143, 145 (Bankr. D. Mass. 1985)(finding that Bankruptcy Rule 2004 examinations are allowed to discover assets and expose frauds). The funds that passed through the Account

4

represent a significant portion of TIBC's uncollected assets. The information requested is crucial to the Administrator's efforts to trace TIBC's assets and collect them on behalf of TIBC's legitimate creditors.

## II.     The Administrator Is not TIBC, but Instead Is Acting in the Interest of TIBC's Legitimate Creditors

In its Objection, AHAB argues that because certain TIBC employees may have been involved in or aware of the alleged fraud by Mr. Al Sanea, the Administrator is not entitled to discovery of the Account documents.

First, the allegations regarding TIBC's employees' purported involvement in or knowledge of fraud are mere allegations and have not been proven. More importantly, the Administrator is not TIBC. The Central Bank of Bahrain appointed the Administrator due to the insolvency of TIBC and "the exposure of the financial services industry in the Kingdom of Bahrain to damages in case of the continuation of The International Banking Corporation to provide its services subject to administration." Mutawi Decl., dated December 12, 2009 (Docket Nos. 3 and 8) ¶ 33.

Second, Courts routinely grant discovery to trustees or other estate representatives appointed in exactly these circumstances - when there are allegations of fraud by the debtor's employees and a need for an innocent third party to investigate the details of any wrongdoing and recover assets. *See, e.g., In re The 1031 Tax Group, LLC, et al.,* Adv. Pro. No. 09-01208 (MG), First Am. Scheduling Order (Docket No. 22) (Bankr. S.D.N.Y. Apr. 20, 2010) (Liquidation Trustee permitted to engage in extensive discovery to ascertain and recover assets of debtor in $132 million tax scheme); *S.E.C. v. Byers, et al.,* No. 08-7104, Fourth Interim Report of Receiver (Docket No. 433) (S.D.N.Y. Aug. 11, 2009) (Receiver granted extensive

discovery to unearth fraud, marshal assets and protect creditors in a $250 million dollar ponzi scheme).

The Administrator or trustee is appointed to protect the interest of the creditors when allegations of fraud or wrongdoing have been made. Moreover, Bankruptcy Rule 2004 discovery is allowed for "the purpose of discovering assets and unearthing frauds." *In re Table Talk, Inc.*, 51 B.R. at 145 (quoting *In re GHR Companies, Inc.*, 33 B.R. 451, 453 (Bankr. D. Mass 1983) (citing *In re Foerst*, 93 F. 190, 191 (S.D.N.Y. 1899)); *see also In Re Sun Medical Management, Inc.*, 104 B.R. 522, 524 (Bankr. M.D. Ga. 1989). The court in *In re Sun Medical*, the court authorized a Rule 2004 examination so that the debtor could "ferret out" facts given the swirling implications of fraud that could potentially give rise to claims that would have a definite impact on the financial affairs of the debtor. *Id.* In making its ruling, *In re Sun Medical* gave weight to the potential causes of action that the Rule 2004 discovery could uncover, particularly where the debtor was not rehabilitated and such claims could be substantial estate assets. *Id.* Similarly, here the Administrator has requested Account documents to "ferret out" facts given the allegations of fraud and to ascertain how TIBC's funds were diverted from the Account, to whom and in what amounts, so that the Administrator can take steps to recover those funds on behalf of investors.

AHAB does not dispute that the Administrator is charged with investigating any potential fraud and marshalling the remaining assets on behalf of legitimate TIBC creditors. Mutawi Reply Decl. ¶ 8. This duty is heightened by the fact that reorganization of TIBC is highly unlikely and thus the Administrator must act carefully to investigate the facts and proceed wherever those facts lead. *Id.* Clearly, the Administrator is not TIBC and thus has not "stepped" into its shoes in the sense asserted by AHAB. Mutawi Decl. ¶ 8. AHAB has not provided any

legitimate reason that the Administrator should not be permitted to carry out its duty to identify claims and marshal TIBC's assets on behalf of TIBC creditors.

### III. AHAB's Allegations Of Fraud Are Mere Allegations: Not Established Facts

AHAB has made a number of allegations of fraud in its Objection. These allegations repeat allegations that AHAB has asserted in numerous litigations involving AHAB and Mr. Al Sanea. Mr. Al Sanea is vigorously contesting those actions. TIBC also is not a party to those lawsuits. Mutawi Reply Decl. ¶ 9. More importantly, allegations are not proof. In more than one instance where AHAB has been forced to provide proof to substantiate its claims, its allegations of fraud have been rejected. Specifically, the Objection refers to the "forged" signature of an AHAB principal, Suleiman Algosaibi, as if this was an established fact. Objection at 6 and 10. To the contrary, the Bahraini Chamber for Dispute Resolution (an entity which is part of the Bahraini legal system) has recently issued a decision rejecting AHAB's claim that Mr. Algosaibi's signature on certain financial documents were forged, instead finding the signatures were genuine. Indeed, it has been reported that AHAB's handwriting expert has deemed the evidence of such forgery as "inconclusive." Mutawi Reply Decl. ¶ 10, Exhibits A and B to Mutawi Reply Decl.

It should also be noted that the Public Prosecutor in Bahrain has interviewed numerous TIBC employees, including most, if not all of the TIBC employees identified by AHAB in its Objection. To date not a single criminal charge or indictment related to the conduct of TIBC's business has been lodged, although that investigation continues.[1] Mutawi Reply Decl. ¶ 10. Further, despite the statements in the Objection, based on the Administrator's investigation, it is

---

[1] The Administrator is aware that the Public Prosecutor has questioned Glenn Stewart, the former CEO of TIBC at length regarding various criminal allegations relating to his conduct whilst the CEO of TIBC. That questioning has not resulted in any formal charge or indictment being leveled against Glenn Stewart to date. However, AHAB advises in the Objection that Mr. Stewart has left Bahrain. *See* Mutawi Decl. at 4, fn. 1.

clear that all the substantive and factual information concerning the loans at issue originated with AHAB (Money Exchange) personnel in Saudi Arabia and were not generated by TIBC personnel, who acted more as scriveners. *Id.*

In any case, AHAB has not disputed any of the facts that are relevant to the Administrator's request for Account documents. For example, AHAB has not disputed that there was a contract between TIBC and AHAB. Mutawi Reply Decl. ¶ 5. AHAB also has not denied that it was and is the account party of the Account. *Id.* AHAB also does not dispute that the Account was used for the transmittal of loan funds by TIBC pursuant to the Agreement and the receipt of interest payments by TIBC. *Id.* The information as to the control of the Account and the disposition of the loan funds are highly relevant to the Administration of TIBC – AHAB has not countered this position; and, AHAB has not alleged that the Administrator has the information it seeks about the Account. *Id.* AHAB argues that it is the victim of a fraud perpetrated by Mr. Al Sanea. If that is the case, then it should be to the benefit of AHAB for the Administrator to investigate this alleged fraud. *Id.* Thus, it is somewhat perplexing why this Objection was lodged at all. The fact of the matter is that the Administrator needs to ascertain the disposition of the loan funds sent to the Account, learning what happened was and is the basis of the Motion and was undertaken by the Administration in the proper discharge of its duties. *Id.* at ¶ 12.

AHAB's unsubstantiated allegations of fraud are not a reason to prevent the Administrator from discovering documents that relate to the substantial assets TIBC remitted to the Account. The bottom line is that the Administrator does not know to whom, or in what amounts or how TIBC's funds were diverted. The Administrator's purpose in filing the Rule

2004 motion is to discover information that will enable the Administrator to answer those questions.

IV.     **AHAB's Request for Reciprocal Discovery as a Condition Precedent to the Granting of the Motion is Unwarranted**

A response to a 2004 Motion is not the proper forum for what is, in effect, a request for unspecified discovery from TIBC. Yet, AHAB states that it would not object to the disclosure of the Account information "in proper reciprocal discovery in an ongoing litigation." Objection at 13. AHAB has cited no authority that would entitle it to reciprocal discovery in this proceeding. AHAB's request for reciprocal discovery is completely unsupported by law. There is no provision in chapter 15 providing for discovery of the assets of a foreign debtor by a creditor; that right is given solely to the foreign representative. AHAB has cited no provision of law to support its request. Further, prior to the initiation of the Administration, AHAB's representatives, the accounting firm, Deloitte & Touche LLP and the law firm of Baker & Mackenzie were in TIBC's offices in Manama, Bahrain for a number of days and presumably had access to all of TIBC's books and records. It would appear that the basis of this access was AHAB's status as the majority shareholder of TIBC. *See* Mutawi Reply Decl. at 5, fn. 3. As such, AHAB's request should be denied.

## CONCLUSION

Wherefore, the Administrator respectfully requests that the Court grant the Administrator's Rule 2004 motion and award such other and further relief to the Administrator as may be just and proper, either at law or in equity.

Dated: New York, New York
      June 21, 2010

Respectfully submitted,

HOLLAND & KNIGHT LLP

By:    /s/ Barbra R. Parlin
         James H. Hohenstein, Esq.
         H. Barry Vasios, Esq.
         Barbra R. Parlin, Esq.
         31 W. 52nd Street
         New York, New York 10019
         Telephone: 212-513-3200
         Telefax: 212-385-9010
         Email: jim.hohenstein@hklaw.com
               barry.vasios@hklaw.com
               barbara.parlin@hklaw.com

*Counsel for the Administrator of The International Banking Corporation B.S.C.*

# 9540586_v2